Carr *et al.*, *vs.* The Trustees of Emory College *et al.*

THOMAS W. CARR, *et al.*, plaintiffs in error, *vs.* THE TRUS-
TEES OF EMORY COLLEGE, *et al.*, defendants in error.

| 32 | 557 |
| 90 | 381 |

1. F. and others filed a bill in equity against C., alleging that certain property belonged to them, and prayed that C. might be compelled to account for its proceeds. C. set up a demurrer to the bill on several grounds. The record showed that the demurrer was sustained and the bill dismissed without the grounds on which it was done: *Held*, that in another contest about the proceeds of the property, the record of that case was inadmissible to show that the parties were concluded by a judgment as to the title: *Held also*, that parol evidence was inadmissible to supply the omission of the record as to the grounds on which the demurrer was sustained.
2. A party to a bill in equity is estopped by a decree thereon, as to matters put in issue by the pleadings, and settled by the decree.
3. Where a *cestui que trust* consents that a part of the trust property may be exchanged for other property by the trustee, and upon a bill filed to remove the trustee, the exchange is passed upon and sanctioned by a special jury and the Chancellor, and ratified by a decree, the *cestui que trust* is estopped.

Bill in equity, in Newton Superior Court. Tried before Judge CABANISS, at the September Term, 1860.

On the 10th of January, 1820, Thomas Carr, then of Columbia county, made his will in due form of law, which will, after his death, to-wit: on the 10th day of November, 1820, was duly proved and recorded in the Court of Ordinary of said county of Columbia.

The 9th and 11th items of the will are as follows, to-wit:

"9th. I give and bequeath unto my son, William Anthony Carr, and Colonel Nicholas Ware, in trust (and whom I constitute and appoint trustees for the purpose herein named) the following negroes, for the sole use, benefit and behoof of my lovely daughter, Selina A. Few, wife of Colonel Ignatius A. Few, viz: Lett and her children, Sarah, Lancaster, and Cornelia; also, Ben and his wife, Elsa, with their future increase—these negroes to be hired out, and the money arising from their labor be paid by my said trustees to my said daughter, Selina, free from the control of her said husband, I. A. Few.

"11th. All the rest and residue of my estate, both real and

personal, not herein disposed of, I will, bequeath and devise in the following manner, viz: one half thereof to my grand-children, the children of my daughter, Susan B. Ware, to them, their heirs and assigns, forever, to be equally divided amongst the whole of them, share and share alike. The other half I give and bequeath to my son William A. Carr and Colonel Nicholas Ware, in trust for the sole use and benefit of my lovely daughter, Selina A. Few, free from the control of her husband, Colonel Ignatius A. Few, to be by my aforesaid trustees vested in bank stock, or some productive fund, and the increase arising therefrom to be paid to my said daughter annually, and such other negroes as may fall to her lot and share, to be disposed of in the same manner as is prescribed for Lett and her children ; and I hereby fully empower my executors, hereinafter named, to sell any part of my real estate which is not herein otherwise disposed of, for the pur-pose of making a division, or for raising funds for the pay-ment of my debts, and carrying this my last will into effect ; and should my said daughter, Selina A. Few, survive her said husband, Ignatius A. Few, then and in that case the trust herein created in my son William and Colonel Ware shall cease, and the property, both real and personal, so bequeathed in trust shall vest in my said daughter Selina solely, and be then delivered into her full possession by my said trustees : *Provided nevertheless*, that if my said daughter Selina die without a child or children of her body, and living at the time of her death, then and in that case the said negroes and other property, real and personal, so herein bequeathed, shall revert to my estate, and be thereafter equally divided among all the children of my son William A. Carr, and the children of my daughter Susan B. Ware, share and share alike. I con-stitute and appoint my son, William A. Carr, Colonel Nicho-las Ware, and my grand-son, Thomas Carr Ware, to be executors of this my last will and testament, the latter to act when he arrives at the age of eighteen years."

After the death of Thomas Carr, to-wit: in the year 1824, the Congress of the United States, passed an act declaring " that the heirs and representatives of Thomas Carr, or their

heirs and representatives, were thereby authorized and empowered to enter, under the direction of the Secretary of the Treasury, five thousand acres of land at any time within two years from the passage of the Act, in any land office of either of the States of Mississippi or Alabama, being the amount of a grant made to him by a resolution of the Legislature of Georgia, passed in 1786."

William A. Carr, as executor of the will of Thomas Carr, entered these lands in the State of Alabama, and afterwards sold them, or a large portion of them, as the property of the estate of Thomas Carr, and the heirs general of the latter filed a bill in equity, in Clark Superior Court, against the former to compel him to account to them for the proceeds of these lands, alleging, that as the grant was made to the heirs of Thomas Carr after his death, they did not pass under his will, but vested immediately in said heirs.

William A. Carr set up a demurrer to this bill, and the record simply shows the following entry as to the disposition of the case, to-wit : " Aug., 1829. Demurrer sustained and bill dismissed."

William A. Carr acted as trustee of the property bequeathed to Mrs. Few for many years, (Col. Nicholas Ware having died,) and on the 20th of December, 1836, he filed a bill in equity in Clark Superior Court, against Colonel Ignatius A. Few and his wife, the said Selina A. Few, praying to be discharged from the office of trustee, and the appointment of another trustee in his stead, to whom he might deliver the trust property.

In this case a decree was rendered discharging William A. Carr and substituting Iverson L. Graves in his stead. It was also decreed " that for and on account of the lands sold in Alabama by the said William A. Carr and granted by Congress to the heirs and legal representatives of Colonel Thomas Carr, deceased, that the said William A. Carr to pay over to his successor, the said Iverson L. Graves, in trust for the use of Mrs. Selina A. Few, $5,258. 25," which sum was, by the terms of the decree, to be paid in three equal installments, on the 3d of March, 1840, and on the 3d of March,

1841, and on the 3d of March, 1842, respectively. The decree further provided, that if the said Ignatius A. Few and his wife, Selina A. Few, preferred to take the stock of the Georgia Railroad and Banking Company at par, or the notes of Robert Jameson, the purchaser of the lands in Alabama, to the money decree, they should have the right to do so, by making their election in writing, and that if they should so elect, that the said William A. Carr should execute a transfer of the railroad stock, or notes, to said Graves, for the use of the said Selina A. Few.

Under this decree the parties elected to take the railroad stock rather than the money decree or the notes on Jameson.

On the 31st day of January, 1840, Mrs. Few applied to Graves, her trustee, and preferred a request that he would execute a blank power of attorney to have said railroad stock sold, transferred, or pledged, and also for receiving the dividends on the same, with which request Graves complied, and took from Mrs. Few a receipt, of which the following is a copy, to-wit:

"I have this day received from Iverson L. Graves, Esq., my lawfully constituted trustee, a blank power of attorney, to have fifty shares of railroad stock, (which, by a decree of the Superior Court of Clark county, in the State aforesaid, was to be transferred by William A. Carr to him, the said Iverson L. Graves, for my use,) sold and transferred, or pledged, and also for receiving the dividends on said stock, and also a blank transfer of the decree of the Court aforesaid in my favor, to be used in case the said Carr should not transfer the said shares, and the said blank power of attorney and transfer of the same shall be a full discharge of my said trustee, Iverson L. Graves, and payment made to me for said shares or decree as the case may be. *Provided*, the shares or decree are sold, otherwise they will remain vested in him as my trustee as heretofore.    31st January, 1840.

"SELINA A. FEW."

Mrs. Few received from her husband notes amounting to $4,200 00, and a lien on a house and two lots in the city of

Carr *et al.*, *vs.* The Trustees of Emory College *et al.*

Columbus, and in consideration thereof the railroad stock was transferred to the trustees of Emory College, and Mrs. Few deposited the notes and lien with Graves, her trustee, to be held by him for her in lieu of the said stock. Graves continued to act as trustee for Mrs. Few until March, 1843, having in his hands during that time the notes and lien aforesaid. The whole of the notes were good and available, and Graves had collected a considerable portion of the money due thereon.

Mrs. Few becoming dissatisfied with Graves, as trustee, filed a bill in Newton Superior Court, in which Ignatius A. Few, her husband, was complainant with her, praying the removal of Graves from his office of trustee, and the appointment of another in his stead. The bill was returned to the March Term, 1842, and amongst other things alleged, that Graves had, as trustee, received forty-two shares of railroad stock, and had converted the stock into other funds for the benefit of the said Selina A. Few, the *cestui que trust.*

Graves answered the bill, and amongst other things, stated the conversion of the stock into other funds, at the special instance and request of the said Selina A. Few.

In this case a decree was rendered removing Graves, and appointing Ignatius A. Few trustee in his stead. The decree also allowed Graves $50 00 for managing the trust estate, and the attorney's fee and costs of the proceedings.

Under this decree Graves turned over the trust property to Ignatius A. Few, and took a receipt therefor, of which the following is a copy:

"Received of Iverson L. Graves the following negroes, to-wit: Letty, Sarah, Jacob, Sam, Ben and Isaac, being all the negroes which went into his hands as trustee, the said negroes having remained in the possession of the *cestui que trust* during his continuance in the office of trustee, and my own note for seventeen hundred dollars, endorsed by Samuel J. Bryan, the interest of which has been received from the Columbus property, also an order on the Messrs. A. J. & T. W. Miller, attorneys at law, for the balance due from Ferry &

Drummond, being about the gross amount of $184 87, also the note of John W. Graves, endorsed by the said Iverson L. Graves, dated June 13th, 18:1, and due the 2d Monday in August thereafter, with interest from date, for the sum of $488 12; also, the sum of twenty-one hundred and twenty-eight dollars in cash; said negroes, order, notes and money in cash, being in full of all the assets and trust property in the hands of said Graves, and this receipt is intended to be a full release of the said Graves from his liability under the decree above stated, he being, however, still liable for the fifty dollars decreed to N. G. Foster, solictor, and the costs for said bill.    March, the 30th, 1843.

IGNATIUS A. FEW,

Trustee for Selina A. Few."

On the 7th of December, 1855, (the said Ignatius A. Few having previously died,) Mrs. Selina A. Few, who was old, and had never borne a child, and no sort of probability that she ever would, executed and delivered a full conveyance and relinquishment to the children of Mrs. Susan B. Savage, formerly Susan B. Ware, and before her first marriage, Miss Susan B. Carr, and to the children of William A. Carr, all right, title, and claim, of any and every nature whatever, that she ever had, or then had, to the railroad stock hereinbefore stated.

On the 15th of August, 1856, Thomas W. Carr, William W. Carr, Elisha W. Carr, Florida C. Carr, and Susan A. Carr, the children of William A. Carr, and Robert B. Ware, Nicholas Ware, Francis Epps, and his wife, Susan Epps, William Head and his wife, Caroline W. Head, and Mary Ann Veitch, children of Mrs. Susan B. Savage, filed their bill in Newton Superior Court, against the trustees of Emory College, and the Georgia Railroad and Banking Company, and Iverson L. Graves, asserting their title to the railroad stock, (increased to seventy-three and a half shares,) as remaindermen under the 11th item of the will of Thomas Carr, grandfather of complainants, and by virtue of the relinquishment and conveyance to them by Mrs. Selina A. Few.    The com-

plainants allege that the lands in Alabama did pass to the legatees, under the will of Thomas Carr, and that it was so decreed and adjudged by the Superior Court of Clark county upon a proper case made, and that the railroad stock was sold to the trustees of Emory College without order or decree of any Court having jurisdiction in the premises, and without authority of law, and they pray that the stock may be, by a decree, transferred on the books of the company to them, that the certificates of stock held by the trustees of Emory College may be delivered up and cancelled, and that the trustees may account for all dividends received by them on said stock.

On the trial of the case, complainants offered in evidence an exemplification of the records of Clark Superior Court touching the bill filed by the heirs general of Thomas Carr against William A. Carr, and the demurrer thereto, and the dismissal of the bill, which evidence was at first admitted, but afterwards excluded by the Court, and complainants excepted.

Complainants also offered in evidence the depositions of William A. Carr to prove that the bill aforesaid was an amicable bill, brought to test the question as to whether the lands in Alabama passed under the will of Thomas Carr, or vested directly and immediately in his heirs, and also to prove, that the bill asserted that the lands did not pass under the will, but invested in the heirs immediately under the Act of Congress aforesaid, and that the demurrer set up the contrary, and that this issue was decided by the Court in favor of the demurrer and against the bill. This evidence being objected to, on the ground that a record could not be proved or supported by parol, was repelled by the presiding Judge, and complainants excepted.

The Court charged the jury, " that if the Alabama lands were granted to the heirs and legal representatives of Thomas Carr by an Act of Congress, passed after the death of said Carr, then these lands did not pass under his will, and were not subject to the trusts and limitations thereof, but vested immediately in the heirs of said Carr.

The Court also charged the jury, " that if the railroad stock, being the proceeds of the Alabama lands, was turned over by William A. Carr to his successor in office, Iverson L. Graves, in trust for the use of Selina A. Few, in compliance with the decree removing said Carr from the office of trustee, and substituting Iverson L. Graves, then the marital rights of Ignatius A. Few were not defeated, and Iverson L. Graves was a mere naked trustee, and there being no · words of separate or exclusive use, the railroad stock vested absolutely in Ignatius A. Few."

To these charges of the Court the complainants excepted.

The jury returned a verdict for the defendants, and the complainants prosecute the writ of error in this case to reverse the judgment, on the grounds of alleged error in the ruling and charges of the presiding Judge hereinbefore set forth.

T. R. R. COBB and CLARK & LAMAR, for the plaintiffs in error.

JOHN J. FLOYD, for defendants in error.

*By the Court.*—LUMKIN, J., delivering the opinion.

This bill is filed by the children of William A. Carr and Susan B. Savage, by virtue of an assignment of a life-estate of Selina A. Few, in and to the property therein named, to recover forty-two shares Georgia Railroad stock, and the dividends thereon, from Emory College.

It is claimed to belong to the claimants, by the will of their grandfather. That it was bought with the proceeds of some lands in Alabama, and that these lands passed by the residuary clause in the will of the said Thomas Carr, in trust, to his daughter, Mrs. Few, and at her death to the complainants.

Emory College alleges that the Alabama lands did not pass under Thomas Carr's will, but that his children were the direct donees of the grant made by Congress to these lands, after the death of Thomas Carr, and that consequently

the marital rights of Colonel Ignatius A. Few, the husband of the said Selina A., attached directly in the lands and the proceeds thereof, and that he conveyed the same to Emory College. Many years ago, it seems that a bill was filed in the Superior Court of Clark county by the heirs-at-law of Thomas Carr against William A. Carr, his executor, who had sold these lands to one Robert Jameson, in Alabama, to make him accountable for their proceeds.

The bill was demurred to and dismissed, upon what ground it does not appear.

This evidence was offered on the trial of this case, and rejected by the Court, and we think very properly, as it did not appear upon what ground the demurrer was sustained, and there were other grounds upon which it might have been sustained, and we are clear that the parol proof of William A. Carr, the defendant in that bill, was inadmissible to supply the record in this particular.

But in the view which we take of the next point, all this is immaterial. At a subsequent period, in Clark county, William A. Carr, being the trustee of Mrs. Few, filed his bill to turn over the trust estate in his hands, to Iverson L. Graves. This bill was filed against Colonel Few and wife, and in this bill it is decreed, that the land fund, which had been vested in Georgia Railroad stock, should be transferred to the said trustee. It is immaterial, therefore, whether Colonel Few was estopped by the first bill or not, he was effectually so by this subsequent proceeding, and we can not for a moment entertain the notion, that because the decree did not employ technical phraseology to create a separate estate in this stock, that it must fail, and become the absolute property of the husband. The decree would be reformed, if necessary, to make it correspond with and conform to the case made by the pleadings, and what was the true intentions of the parties.

Nor was there any thing wrong in this; on the contrary, to have suffered this grant of land from the United States to the heirs of Colonel Carr to have inured to Colonel Few, and through him to his creditors, would have been a cruel hard-

ship. In consenting to let this fund therefore take this direction, Colonel Few did nothing more than equity would compel him to do. He would never have been allowed to get possession of this fund except upon these terms. But does all this avail the complainants? Mrs. Few, as she had the right to do, had consented for this railroad stock to be exchanged for other property, and though this case was sent back again one hundred times, the same result would follow. Moreover she has caused Iverson L. Graves to be removed from the trusteeship, and Colonel Few to be substituted in his place, and a special jury of Newton county have sanctioned and ratified this whole proceeding. She may have been overreached. She may have yielded to her conjugal feelings, and made a hard bargain with her husband. It is what thousands have done before her, and thousands will do hereafter. So long as trust estates exist they will be controlled by husbands. It is possible—yes, probable—that in the present case, if the property received in lieu of railroad stock be what William Few represents it, utterly worthless, Colonel Few feels justified in his conscience on account of the claim which he relinquished, as husband, to the Alabama lands. The heirs of Colonel Thomas Carr, excluding William A. Carr, the executor, sustained a great sacrifice in the premature sale of those lands, and that, too, under the executor's title, which was not worth the paper it was written on.

Let the judgment be affirmed.