65 283
d119 132

## WARE *et al. vs.* THE TRUSTEES OF EMORY COLLEGE *et al.*

[JACKSON, Justice, being disqualified from presiding in this case on account of being a trustee, Judge Crisp, of the southwestern circuit, was designated by the governor to preside in his place.]

1. Where a testator died in 1820, leaving a will, by which, after making certain specific bequests, he gave to trustees one-half of the residue of his estate in trust for his married daughter for life, and if she should survive her husband, the trust should cease and the property vest in her, and then providing that if she should die, leaving no child or children living at her death, such property should go to the children of her brother and sister, and after testator's death a grant of land was made by the government of the United States to the heirs and legal representatives of said testator:

*Held*, that the heirs and legal representatives took under the grant and not under the will.

2. If the trustees of the married daughter received in payment of her interest in the land so granted, $5,000.00 in Georgia Railroad stock and with her consent, conveyed it to Emory College, and afterwards, in 1855, being a widow, old and childless, she relinquished and assigned to the children of the brother and sister "all claims, if any she had," to said railroad stock, and they, in 1856, by virtue of said relinquishment, and also in their own right as remainder-men under the will of testator, filed their bill against the said college and railroad, or against the college alone, to recover the same, and upon the trial in 1860, there was a verdict for the defendants, and thereafter, in 1878, the said daughter having died childless, the grand-

v 65—19

children and representatives of the testator filed their bill against the said Emory College and the Georgia Railroad to recover the said stock under the will of testator:

*Held*, that Emory College, under the conveyance, acquired a good and valid title to the said stock.

3. That the grand-children of the testator had no remainder interest in the said stock.

4. That even if they had such interest, the judgment for the defendants on the bill filed in 1856 was a complete bar to the bill brought in 1878, as all their rights were adjudicated therein.

Wills.    Estates.    Title.    Grant.    Remainder.    *Res adjudicata.*    Former recovery.    Before Judge SPEER. Newton Superior Court.    September Term, 1879.

Ware *et al.* brought this bill against the trustees of Emory College and the Georgia Railroad alleging, in brief, as follows:

In 1820, Thomas Carr died testate. After making numerous specific bequests, the eleventh item of the will left one-half of the residue of the estate to the children of Susan B. Ware; the other half was left to William A. Carr and Nicholas Ware in trust for Selina A. Few, for life, free from the control of her husband, Ignatius Few; provided, that if she should outlive her husband, the trust should cease, and the property vest in her; provided, also, that if she should die without leaving living child or children, such property should go to the children of Susan B. Ware and William A. Carr, share and share alike. In other words, the will created an estate for the use of Mrs. Few for life, with executory devise to the said children.

The will was duly probated, etc. William A. Carr accepted the trust and became executor and trustee. While acting as trustee, he received a large amount of money and property, subject to the limitations stated, $5,000.00 of which he invested in stock of the Georgia Railroad. Afterwards, in 1839, Carr was removed from the

trusteeship, on a bill in Clarke superior court, and I. L. Graves succeeded him. Under this change, Carr transferred to Graves, his successor, fifty shares of stock, (worth $5,000.00) subject to the limitations already stated. In 1830, Graves, combining and confederating with the trustees of Emory College to defraud the devisees in remainder, without any consideration whatever, and without notice to parties in interest, or any order of court, transferred said stock to them (the trustees), and they took with full notice of the manner in which he held. The Georgia Railroad, also with full notice, made the transfer on its books, and has ever since paid dividends to such transferees, in fraud of the devisees in remainder. In 1845, Few died, and thereupon the trust ceased, and life estate with remainder over vested. He died insolvent, and there has never been administration on his estate. Graves also died during the life-time of Mrs. Few, insolvent, and there has been no representation on his estate. Mrs. Few never had any children, and died childless in 1876. Thereupon the remainder created by Thomas Carr's will vested, and the remainder-men became entitled to the property or its proceeds, with dividends, etc. Mrs. Few never had any property except such as was subject to the conditions already stated. She died insolvent, and there has never been administration on her estate.

The estate of Thomas Carr has long been wound up; there are no debts nor administration, and no need of any. Complainants, therefore, are the persons entitled to the property under the will of Carr, being the children of Susan B. Ware and William A. Carr, and those who represent such children. All parties in interest are parties to the bill.

Complainants prayed—

(1.) For discovery as to dividends, etc., etc. (not material here).

(2.) That the college be decreed to transfer the stock to complainants.

(3.) Execution on failure to transfer.

(4.) That the railroad be decreed to make the necessary changes on its books, etc.

(5.) That the railroad be required to pay complainants the dividends accrued since 1876.

(6.) That full and complete title to the stock be decreed to be in complainants.

(7, 8.) General relief and subpœna.

To this bill defendants did not answer, but pleaded former recovery. The plea alleged that at September term, 1860, of Newton superior court, the same matters and things were adjudicated on a bill filed against the same defendants and I. L. Graves, by the same complainants, except that M. A. Veitch, E. W. Carr, and Susan A. Carr are now dead, and represented in this suit by their legal representatives.

The proceeding pleaded in bar was, in brief, as follows:

In 1856, Thomas W. Carr and others filed their bill against the trustees of Emory College, I. L. Graves, and the Georgia Railroad. They alleged as follows: Thomas Carr died leaving the will already described; William A. Carr was trustee, and was succeeded by Graves, who received forty-two shares of Georgia Railroad stock, with full notice of the limitations attaching to it. In 1840, Graves, in violation of his trust, and without consent of, or notice to, the beneficiaries, and without any consideration moving to them, transferred said stock to the trustees of Emory College, as complainants are informed, in payment of a debt of Ignatius Few, husband of Selina A. Few. In 1849, this stock was increased to seventy-three and one-half shares. Mrs. Few has never borne a child, and being advanced in years, it is not probable or possible that she will. In 1855, Mrs. Few made a deed conveying to complainants (the children of William A. Carr and Susan B. Ware) all her right, title and interest in and to the said shares of stock—she being then a widow, and *feme sole*. Charges collusion, etc.

The prayer was that the trustees be compelled to deliver up the certificates of stock held by them to be canceled, and account for dividends; that the railroad be decreed to issue new scrip to complainants in place of this; that they should have general relief and subpœna.

This bill had as exhibits to it the will of Thomas Carr, the removal of William A. Carr and appointment of Graves as trustee, receipt for the stock by Graves, notice by Carr to Graves of limitations, and conveyance by Mrs. Few to complainants of her life interest. Service of this bill was acknowledged by Judge J. J. Floyd, as attorney for Graves and the college. There was no official entry of service or acknowledgement by the Georgia Railroad.

Among the papers in the suit pleaded in bar was an amendment, which was substantially as follows: During the life of Thomas Carr, for services to the government, he became entitled to certain bounty lands. For some reason, it was necessary to apply to congress in regard to the lands. Pending this application he died, and afterwards congress passed an act allowing the heirs or legal representatives to lay off the land. W. A. Carr, executor, did so. Some of the heirs general of Thomas Carr filed a bill about 1824, claiming that the land did not pass under the will, but to the heirs general. On demurrer it was dismissed. And further, that Ignatius Few transferred to William A. Carr any interest he might have in the lands. By the acquiescence of the parties, and by the demurrer, sustained as above stated, the trusts of the will were conclusively determined to attach to said lands.

To this bill (the bill pleaded in bar) Graves answered substantially as follows: He knew nothing personally of Thomas Carr; had seen the will under which complainants claim, with the items' as set forth by them. Admits the discharge of William A. Carr, as trustee, and his appointment under bill in Clarke superior court. The decree in that case provided for an election to take the railroad stock or notes of one Jamison on account of the lands in

Alabama. Under instructions from his *cestui que trust*
defendant elected to take the stock, and did receive fifty
shares; but upon an accounting before referees to whom
the management of the trust was referred, this was found
to be eight shares too much, and Graves reconveyed these
eight to Carr. In 1840 these forty-two shares were con-
veyed to. the college. It was done in. this way: Graves
gave to Mrs. Few a blank power of attorney to dispose of
the stock; she gave to him an acquittance of his liability
to her for said stock; he then tranferred said stock to the
trustees of the college, receiving nothing from them, but
receiving from Mrs. Few's husband, Ignatius Few, a re-
ceipt for $3780.00, as having been received by *him* from
the hands of one Bryan, an agent of the college. Graves
has heard that Few had used funds entrusted by the
United States government to him, in purchasing property
in Columbus, Georgia, and that he persuaded his wife to
make the arrangement so as to settle in some way this
difficulty. .He gave her his notes for $4,000.00 and a lien
on Columbus property. In 1842, Few and Mrs. Few filed
their bill against Graves. In it they set out the full trust,
the removal of Carr and appointment of Graves, the re-
ceipt by him of trust funds, and they allege on account of
threats of future suits against him, etc., he did not admin-
ister the trust satisfactory to them, and they prayed his
removal and the appointment of Few. Answering this
bill of 1842, Graves stated his administration of the trust
to the best of his ability, and under the wishes of Mr.
and Mrs. Few, and expressed his willingness to resign the
trust if he could do so safely. These proceedings, Graves
urged, were conclusive, and prevented a re-opening of
accounts against him. He further alleged that he was
advised and believed that complainants had no interest in
these funds, because they arose from the proceeds of the
sale of certain lands in Alabama, of which Thomas Carr
was never seized, but which were granted after his death
to his heirs and legal representatives, and an interest in

which was absolutely vested in Mrs. Few, as one of the heirs general, and through her in her husband. The answer also states that Graves knew nothing about the services of Thomas Carr to the United States government, etc. He denied confederation, etc., and exhibited verdict and judgment appointing him, also proceedings discharging him, and receipts of Mr. and Mrs. Few.

The president of the board of trustees answered denying any knowledge of the matters charged in the bill.

The jury found generally for defendants, September 1860. Complainants excepted.

The judgment was affirmed. (32 *Ga.*, 557.)

Such was the plea in bar.

Complainants took exception to it, and filed a traverse on the following grounds:

(1.) The judgment pleaded in bar was not between the same parties as the present suit.

(2.) The subject matters of the suit were different.

(3.) If any of the parties appear to be the same in name, they sue now in a different right from what they did then.

(4.) The issues in this suit were not involved before.

(5.) The sole issues involved in the former adjudication were the admissibility of certain evidence, and an estoppel on Mrs. Few by reason of a previous contract covering her life estate in the property in question.

(6.) There had been a former adjudication on the subject of the Alabama lands in Clarke superior court, on a bill filed in 1855, to which all the present parties, or their privies, were parties; and by which suit it was settled that the Alabama lands did pass under the will of Thomas Carr, and the proceeds were subject to the limitations thereof; and that it was not decided otherwise in the suit pleaded in bar.

(7.) The paper purporting to be an amendment to the bill pleaded in bar never was filed, or served, or passed upon.

(8.) That the Alabama lands were not granted to the heirs of Thomas Carr, but were granted to him in his life-time, and that it has not been decided otherwise, and statements to the contrary are erroneous.

On this traverse issue was joined.

Complainants introduced the following evidence :

(1.) Will of Thomas Carr, duly probated, etc., with letters of administration to William A. Carr.

(2.) Admission of the defendant's attorneys that the trustees held, and still hold, the stock transferred to them by Graves, trustee, and forming the subject matter of the suit.

(3.) Two acts of congress allowing the heirs and legal representatives of Carr and others a certain time within which to enter a tract of land in the land office, in lieu of certain land already granted to said Carr and others, by the state of Georgia, in 1786.

(4.) Record from Clarke superior court, showing discharge of W. A. Carr from the trusteeship, appointment of Graves, his acceptance of the trust, and his taking the stock under the decree.

(5.) Complainants offered in evidence the record of *Carr vs. Avery et al., administrators, et al.*  To understand this record it is necessary to go over the nature of the litigation, as set out in the record itself, as follows : In 1820 Thomas Carr, the testator, died.  In 1824 certain of the heirs general filed a bill against W. A. Carr, executor of Thomas Carr, setting out the manner in which the executor received and took possession of the Alabama lands, and was proceeding to administer them according to the will; they claimed that said lands did not pass under the will, but by inheritance to the heirs, (Mrs. Few being one of complainants) and they prayed a decree accordingly.  On demurrer this bill was dismissed.  The demurrer was general, and for non-joinder of parties. The heirs then acquiesced in the administration aforesaid by the executor, and he disposed of said lands, and paid

over the proceeds according to the eleventh item of Carr's will—one-half to the children of Susan B. Ware, and one-half to W. A. Carr, as trustee of Mrs. Few. In 1839 he was discharged and Graves appointed to succeed him. Graves thus received the stock of the Georgia railroad as successor of W. A. Carr in the trusteeship. In 1850 Avery *et al.*, administrators of Thomas D. Carr, a son of testator, Thomas Carr, deceased, filed a bill against William A. Carr. They set out the manner of the grant of the Alabama lands, the way in which he had taken possession of them, and alleging that they did not pass under the will of Thomas Carr, but directly to the heirs, and that William A. Carr's administration of them was a misappropriation; prayed that he be required to account for the lands and their proceeds to the heirs of Thomas Carr. When the litigation had reached this point, William A. Carr filed his bill against Avery *et al.*, administrators, and made all the heirs and residuary legatees of Thomas Carr parties. The bill recited all the facts above stated, giving a detailed history of the litigation; it claimed that the Alabama lands did pass under the will of Thomas Carr, that it had been so decided, that the heirs had acquiesced, and that the proceeds had been distributed subject to the limitations of the will, although this was against his interest, (he being an heir, but not receiving any of these proceeds under the will). The object of this bill was to settle finally the question whether the Alabama lands passed under the will, and to enjoin further suits upon that issue. The jury found for complainant, and an injunction was granted accordingly. This was in 1855.

When this record was offered in evidence, the court rejected it because the trustees of Emory college were not parties to it, and because it was irrelevant. Defendants introduced the record pleaded in bar, over the objection of complainants' counsel, including the remittitur from the supreme court.

There was some testimony in regard to service of the

bill pleaded in bar, not material here. The case reported in 32 *Ga.*, 557, was also read by consent to the jury.

Complainants introduced two acts of congress dated ———, by which authority was granted to the heirs and legal representatives of Thomas Carr (the testator) to locate certain land, under authority of which acts the Alabama lands were run off and held by the executor of Thomas Carr.

Under the charge, the jury found for defendants. Complainants moved for a new trial on the following, among other grounds :

(1.) Because the verdict was contrary to law and the evidence.

(2.) Because the court refused to charge the following request : "If you believe from the evidence that the suit pleaded in bar by the defendants was a suit to recover a life estate of Mrs. Few by virtue of an assignment or conveyance from her, and that the present suit is not to recover a life estate, but a remainder after the life estate, then the subject matter of the suits is not the same, and you will find against defendants' plea."

(3.) Because the court refused to give the following request without qualification : "If the jury believe from the evidence that the suit pleaded in bar was brought to recover a remainder interest, and was brought before the remainder vested—that is, if it was brought before the life estate ended and without proper reason to bring it at that time, such a suit would not bar the remainder-men from bringing another suit after the end of the life estate for the remainder interest."

The court added this qualification : "Unless the defense to said suit so brought waived the existence of the life tenant and put their defense on grounds that barred both assignees and remainder-men ; that is on the merits of the title held both by life-tenant and remainder-men ; if this was done, and the case decided on its merits, it would be a bar to both life-tenant and remainder-men, if they were parties thereto."

(4.) Because the court refused to charge the following request: "If you believe from the evidence that the holder of an estate for life under the will of Carr made a conveyance of her estate to the remainder-men, which conveyance was not valid, and that such remainder-men then sued for the whole estate, the decision in that case would not bar a suit for the remainder interest on the end of the life estate."

(5.) Because the court rejected the record of the case of *Carr vs. Avery et al., administrators, et al.* set out in the evidence above.

The motion was overruled, and complainants excepted.

J. H. LUMPKIN; POPE BARROW; A. B. SIMMS, for plaintiffs in error.

JOHN J. FLOYD; CLARK & PACE; H. D. McDANIEL, for defendants.

CRISP, Judge.

In 1876, Selina A. Few departed this life. Whereupon plaintiffs in error, being the grand-children and representatives of grand-children of Thomas Carr, deceased, brought their bill in Newton superior court against the defendants in error, alleging that the remainder created by the will of Thomas Carr had vested, that the railroad stock, bought with the proceeds of the Alabama lands, passed under the will of Carr, that the railroad and college had notice of their interest at the time of taking, etc., and prayed, amongst other things, that the college be decreed to transfer the stock to complainants, pay dividends since 1876, and that full and complete title to said stock be decreed in complainants. To this bill defendants did not answer, but pleaded former recovery. The plea alleged that at the September term, 1860, of Newton superior court, the same matters and things were adjudicated on a bill filed against the same defendants and I.

L. Graves by the same complainants, except that M. A. Veitch, E. W. Carr and Susan Carr are now dead and represented in this suit by their legal representatives. The suit pleaded in bar was the bill of August 15th, 1856.

Complainants filed a traverse of this plea on the grounds, amongst others, that the judgment pleaded in bar was not between the same parties in the same right, and that there had been a former adjudication on the subject of the Alabama lands in Clarke superior court on a bill filed in 1855, to which all the present defendants, or their privies, were parties, by which it was settled that the Alabama lands did pass under the will of Thomas Carr, and the proceeds were subject to the limitations thereof, and that it was not decided otherwise in the suit at bar. The bill of 1855 appears in the statement of facts. On this traverse issue was joined, and the case went down to the jury. Under the charge a verdict was rendered for defendants and a decree entered accordingly. Complainants below excepted, and the case is brought here to review that finding.

We do not think the heirs and representatives of Thomas Carr took these Alabama lands under his will. After his death the government granted them, not to Carr, but to his heirs and representatives; none of the limitations established by the will apply to this property. Mr. Few, by virtue of his marriage with Selina Carr, became one of the heirs of Thomas Carr, and as such he was entitled to receive the proceeds, or his part of the proceeds, of the Alabama lands. He did not assert this right. W. A. Carr was the executor of Thomas Carr; as such he sold these Alabama lands, retaining the part to which Mr. Few was entitled, holding it as trustee for Mrs. Few. In 1836, upon his own application, he was discharged and I. L. Graves was appointed trustee in his stead. The decree appointing Graves provided "that for and on account of the lands sold in Alabama by the said W. A. Carr and granted by congress to the heirs and legal representative

Ware *et al.* *vs.* The Trustees of Emory College *et al.*

of Thomas Carr, deceased, that said W. A. Carr pay over to his successor, said I. L. Graves, in trust for Mrs. Few, $5.258.25." This Alabama land, or the proceeds, was not trust property until this decree. It belonged to Mr. Few. While Graves was trustee, with the consent of Mrs. Few, the *cestui que trust*, the property in litigation, the stock, which Graves had received under the decree in lieu of the money due Mrs. Few from Carr, was transferred to the trustees of Emory college, Mrs. Few receiving in exchange for said stock good and collectible notes amounting to four thousand two hundred dollars, and a lien on a house and two lots in the city of Columbus; the property so received by her she deposited with Graves, her trustee, to be held by him for her instead of said stock. In 1842 Mrs. Few becoming dissatisfied with her trustee, filed her bill in Newton superior court, praying for his removal and the appointment of another in his stead; in this case a decree was rendered, approving the conduct of Graves in converting the railroad stock into other funds, removing him as trustee, and appointing Mr. Few. He accepted the trust, thereby estopping himself from denying that this was trust property, made so by the decree of the court by his consent, not made so by the will of Thomas Carr. Mrs. Few was the sole beneficiary of the trust, and this court has decided that, as against her, the college has a good title. 32 *Ga.*, 557. Unless the Alabama land passed under the will of Thomas Carr complainants have no case. We are clearly of the opinion that they did not so pass, and we are gratified to find that in this view we are sustained by so distinguished a jurist as Judge Lumpkin; in 19 *Ga.*, page 70, when discussing the will of Thomas Carr he says: "The Alabama lands, it is true, were sold by William A. Carr as executor of his father, and the money invested in Isaac (a slave) and railroad stock. But if these lands were granted by the government directly to the heirs of Thomas Carr, subsequent to his death, then this fund could not be followed and affected by the trust in the will." Again,

in 32 *Ga.*, page 566, on the same subject he says : " The heirs of Thomas Carr, excluding William A. Carr, the executor, sustained a great sacrifice in the premature sale of these lands, and that too under the executor's title, which was not worth the paper it was written on."

Complainants insist that the verdict and decree rendered in 1855 on the bill of *Carr vs. Avery et al.*, is an adjudication that the Alabama lands did pass under the will of Carr, and these defendants are bound by that decree. They are not bound unless they were parties or privies. We cannot see that they were either ; the trustees of Emory college had owned this stock more than ten years before that bill was filed.

We think, too, that the adjudication on the bill of 1856 was a complete bar to this bill, as all the rights of complainants were determined therein. See 32 *Ga.*, 557.

Judgment affirmed.